[L. A. No. 13122. In Bank.—December 30, 1932.]

THE CITY OF LOS ANGELES (a Municipal Corporation), Appellant, v. SADIE D. GRIFFITH ABBOTT et al., Defendants; ROBERT L. HALPERIN, Respondent.

[L. A. No. 13123. In Bank.—December 30, 1932.]

THE CITY OF LOS ANGELES (a Municipal Corporation), Appellant, v. SADIE D. GRIFFITH ABBOTT et al., Defendants; LEON ESCALLIER, Respondent.

[L. A. No. 13124. In Bank.—December 30, 1932.]

THE CITY OF LOS ANGELES (a Municipal Corporation), Appellant, v. SADIE D. GRIFFITH ABBOTT et al., Defendants; LENA GRANAS, Respondent.

[L. A. No. 13125. In Bank.—December 30, 1932.]

THE CITY OF LOS ANGELES (a Municipal Corporation), Appellant, v. SADIE D. GRIFFITH ABBOTT et al., Defendants; GUSSIE LEVY, Respondent.

[L. A. No. 13126. In Bank.—December 30, 1932.]

THE CITY OF LOS ANGELES (a Municipal Corporation), Appellant, v. SADIE D. GRIFFITH ABBOTT

et al., Defendants; LOUISE B. PRUDHON, Respondent.

[L. A. No. 13127. In Bank.—December 30, 1932.]

THE CITY OF LOS ANGELES (a Municipal Corporation), Appellant, v. SADIE D. GRIFFITH ABBOTT et al., Defendants; MINNIE COHEN et al., Respondents.

[L. A. No. 13128. In Bank.—December 30, 1932.]

THE CITY OF LOS ANGELES (a Municipal Corporation), Appellant, v. SADIE D. GRIFFITH ABBOTT et al., Defendants; LOUIS KLENER et al., Respondents.

[L. A. No. 13129. In Bank.—December 30, 1932.]

THE CITY OF LOS ANGELES (a Municipal Corporation), Appellant, v. SADIE D. GRIFFITH ABBOTT et al., Defendants; BURTON & COMPANY et al., Respondents.

[L. A. No. 13130. In Bank.—December 30, 1932.]

THE CITY OF LOS ANGELES (a Municipal Corporation), Appellant, v. SADIE D. GRIFFITH ABBOTT et al., Defendants; OLIVA DUER, Respondent.

[L. A. No. 13131. In Bank.—December 30, 1932.]

THE CITY OF LOS ANGELES (a Municipal Corporation), Appellant, v. SADIE D. GRIFFITH ABBOTT et al., Defendants; LOUISE C. FRENCH, Respondent.

[L. A. No. 13132. In Bank.—December 30, 1932.]

THE CITY OF LOS ANGELES (a Municipal Corporation), Appellant, v. SADIE D. GRIFFITH ABBOTT et al., Defendants; JOHN F. HINES et al., Respondents.

[L. A. No. 13133. In Bank.—December 30, 1932.]

THE CITY OF LOS ANGELES (a Municipal Corporation), Appellant, v. SADIE D. GRIFFITH ABBOTT et al., Defendants; WILLIS O. LEWIS, Respondent.

[L. A. No. 13134. In Bank.—December 30, 1932.]

THE CITY OF LOS ANGELES (a Municipal Corporation), Appellant, v. SADIE D. GRIFFITH ABBOTT et al., Defendants; W. E. LEWIS, Respondent.

[L. A. No. 13135. In Bank.—December 30, 1932.]

THE CITY OF LOS ANGELES (a Municipal Corporation), Appellant, v. SADIE D. GRIFFITH ABBOTT et al., Defendants; W. E. LEWIS et al., Respondents.

[L. A. No. 13136. In Bank.—December 30, 1932.]

THE CITY OF LOS ANGELES (a Municipal Corporation), Appellant, v. SADIE D. GRIFFITH ABBOTT et al., Defendants; W. D. MORGAN et al., Respondents.

[L. A. No. 13137. In Bank.—December 30, 1932.]

THE CITY OF LOS ANGELES (a Municipal Corporation), Appellant, v. SADIE D. GRIFFITH ABBOTT et al., Defendants; FRED MURCH et al., Respondents.

[L. A. No. 13138. In Bank.—December 30, 1932.]

THE CITY OF LOS ANGELES (a Municipal Corporation), Appellant, v. SADIE D. GRIFFITH ABBOTT et al., Defendants; GEORGE W. PRIOR, Respondent.

[L. A. No. 13139. In Bank.—December 30, 1932.]

THE CITY OF LOS ANGELES (a Municipal Corporation), Appellant, v. SADIE D. GRIFFITH ABBOTT et al., Defendants; PRUDENTIAL LIFE INSURANCE COMPANY et al., Respondents.

[L. A. No. 13140. In Bank.—December 30, 1932.]

THE CITY OF LOS ANGELES (a Municipal Corporation), Appellant, v. SADIE D. GRIFFITH ABBOTT et al., Defendants; PHILLIP A. SEEWAGEN et al., Respondents.

[L. A. No. 13141. In Bank.—December 30, 1932.]

THE CITY OF LOS ANGELES (a Municipal Corporation), Appellant, v. SADIE D. GRIFFITH ABBOTT et al., Defendants; R. C. SOLOMON & COMPANY et al., Respondents.

[L. A. No. 13142. In Bank.—December 30, 1932.]

THE CITY OF LOS ANGELES (a Municipal Corporation), Appellant, v. SADIE D. GRIFFITH ABBOTT et al., Defendants; ROBERT C. SOLOMON et al., Respondents.

[L. A. No. 13143. In Bank.—December 30, 1932.]

THE CITY OF LOS ANGELES (a Municipal Corporation), Appellant, v. SADIE D. GRIFFITH ABBOTT et al., Defendants; A. R. THOMPSON et al., Respondents.

[L. A. No. 13144. In Bank.—December 30, 1932.]

THE CITY OF LOS ANGELES (a Municipal Corporation), Appellant, v. SADIE D. GRIFFITH ABBOTT et al., Defendants; HERBERT D. UPDIKE et al., Respondents.

[L. A. No. 13145. In Bank.—December 30, 1932.]

THE CITY OF LOS ANGELES (a Municipal Corporation), Appellant, v. SADIE D. GRIFFITH ABBOTT et al., Defendants; WESTLAKE PARK INVESTMENT COMPANY, Respondent.

Erwin P. Werner, City Attorney, Frederick von Schrader, Assistant City Attorney, and Arthur W. Nordstrom and C. N. Perkins, Deputies City Attorney, for Appellant.

Hyams & Himrod, Aubrey Devine, Hill, Morgan & Bledsoe, Schusterman & Pugh, Andreani, Haines, Bisher & Carrey and Harold E. Prudhon for Respondents.

THE COURT.—Pursuant to stipulations of the parties, the above-entitled twenty-four cases have been consolidated for decision, it being agreed that all of the cases may be determined upon the briefs and arguments filed in L. A. 13122. Whatever is said in this opinion, therefore, in reference to the Halperin case will apply equally to the other twenty-three cases.

L. A. 13122 involves an appeal by the plaintiff, the City of Los Angeles, from a judgment dismissing a condemnation action, which judgment of dismissal allowed respondent Halperin his costs, including attorneys' fees. The other twenty-three appeals involve other defendants in the condemnation suit who were likewise awarded costs and attorneys' fees. The facts giving rise to the present controversy are as follows:

In November of 1923 the City of Los Angeles filed a complaint in condemnation, naming respondent Halperin and the other respondents and other parties as defendants. The complaint was in the form usual in such actions, alleging the passage of an ordinance of intention by the city council, designated as Ordinance No. 45501 (N. S.), and asking that, in pursuance to that and other supplementary ordinances, portions of the lands of respondent Halperin and of the

other respondents and others be condemned for the purpose of opening, widening and extending Mines Avenue and Tenth Street in the City of Los Angeles. Respondent Halperin, and the other respondents, filed separate answers putting into issue the value and severance damages to their respective pieces of property sought to be condemned.

Early in May of 1929 the city was served by respondent Halperin with a notice of motion to dismiss the action. The notice of motion recited that respondent Halperin intended to move the court "to dismiss the above entitled action for the reason that the same has been abandoned by the plaintiff, and will also move the court for a judgment of dismissal and for costs and attorneys' fees herein under and pursuant to the provisions of section 1255a of the Code of Civil Procedure.

"Said motion will be made upon the ground that said action has been abandoned by the plaintiff, and will be based upon the affidavit of Wm. B. Himrod herewith filed, and upon the records, files and papers in the above entitled action."

The affidavit above referred to of William B. Himrod, one of the attorneys for respondent Halperin, recites that the condemnation suit had been instituted by the city pursuant to the Street Opening and Widening Act of 1903 (Stats. 1903, p. 376) for the condemnation of certain lands for street purposes; that respondent had appeared and answered; "that subsequent to the filing of said answer as aforesaid, plaintiff herein abandoned the above entitled action and has brought another suit in connection with the same proceedings, which said suit is now pending in the above entitled court". No counter-affidavit was filed by the city. No other affidavit was filed on behalf of respondent. So far as the record shows all that the trial court had before it when it decided the motion to dismiss was the notice of motion to dismiss, the affidavit of William B. Himrod, and the files and records in the condemnation suit. The trial court granted the motion to dismiss. The judgment recites that "it appearing to the court that the plaintiff has failed to prosecute said action and has abandoned the same . . . Now, therefore, it is ordered, adjudged and decreed that the above entitled action be and the same is hereby dismissed, and it is ordered that said

defendant Robert L. Halperin have judgment against the plaintiff for costs [including attorneys' fees] in the sum of $1,653.50.''

From this judgment the city has prosecuted this appeal.

■ Appellant contends that although it does not appear in the record now before us, as a matter of fact, when the motion to dismiss was argued there was presented to the trial court, in writing, a copy of a final judgment of the superior court permanently enjoining the city from further prosecuting the condemnation suit here involved. Appellant presented this injunction to the trial court in explanation of its failure to further prosecute the condemnation suit. Appellant also states that it appealed from the judgment in the injunction matter, but that that judgment was affirmed by this court. The injunction proceeding was entitled *O. T. Johnson Corp. v. City of Los Angeles*, and the opinion of this court is to be found in 198 Cal. 308 [245 Pac. 164]. This judgment of the state trial court, which was affirmed by this court without modification, in broad and general terms held said Ordinances No. 45501 (New Series) and No. 46537 (New Series), invalid and ordered that the temporary injunction be made permanent, and that the defendants and *all the officers, agents and employees of the City of Los Angeles and their successors in office* and each of them be restrained and enjoined from paying out any moneys of the said city for any costs or expenses incurred in connection with the *improvement provided for by Ordinance No. 45501 (New Series) and Ordinance No. 46537* (New Series) (being the identical ordinances now before this court), including the costs of the prosecution of the condemnation suit purported to be authorized by said Ordinance No. 46537 (New Series) and that the plaintiffs have and recover their costs. Upon an appeal taken to this court we held upon an extended review of said ordinances, in addition to other pronouncements, that ''There is, therefore, not only a failure of description, but a misdescription of the proposed improvement, and the ordinance of intention and notice of public work were fatally misleading and defective''. This case presents unusual facts. We have before us as the foundation of a condemnation proceeding the identical ordinances which were adjudged invalid by this court in the Johnson case

and which, therefore, could not support a judgment. The original action in condemnation was commenced by the same plaintiff, the City of Los Angeles, against the respondents to effect a common public improvement, the properties sought to be condemned being units of an integral whole in the plan of a definite public improvement. To hold under the circumstances of this case that we cannot upon the affirmative matters appearing herein take notice of our own decision which condemned said ordinance and which would render an attempt to further prosecute the instant case an idle and indefensible act, if not indeed contemptuous, would be to blink the perceptive sense of courts to a degree not consistent with the increasing need for a more practical and efficient method in the administration of the law. Respondent does not deny that the city was in fact permanently enjoined from prosecuting the condemnation action by the judgment in the O. T. Johnson Corporation case, nor does he deny that on the argument on the motion to dismiss, the trial court was furnished with a copy of the permanent injunction. Respondent contends that this court cannot consider the effect of the permanent injunction in reference to the respondent's right to costs and attorneys' fees, even though it was in fact considered by the trial court for the reason that it is not contained in the record on appeal, and that this court is bound by the record on appeal. Respondent further contends that this court cannot judicially notice the injunction judgment under the authority of *Reed* v. *Cross,* 116 Cal. 473 [48 Pac. 491]; *Sewell* v. *Johnson,* 165 Cal. 762 [134 Pac. 704, Ann. Cas. 1915B, 645], and other cases. Although those cases undoubtedly indicate that ordinarily the appellate court will not take judicial notice of its judgment in other cases, that rule has no application to the peculiar facts of the present case. The reason for the rule prohibiting the court from taking judicial notice of its judgment in another case is obvious. Ordinarily it would be unfair to a respondent to permit the appellant to rely on a judgment not contained in the record because the respondent has had no opportunity to argue its legal effect before the trial court, and to introduce, if he can, refuting testimony. Here there is no dispute but that the judgment involved was presented to the trial court and its legal effect con-

sidered by that court in rendering its judgment. The rule precluding the court from taking judicial notice of its judgment in another case is not an inflexible one, and has several exceptions. One such exception is recognized in *Sewell* v. *Johnson, supra,* where this court held it would take judicial notice of its judgment in one case rendered after the trial of the action then on appeal. The same exception is recognized ·in *Ballard* v. *Searls,* 130 U. S. 50 [9 Sup. Ct. Rep. 418, 32 L. Ed. 846] ; *United States* v. *Commercial Credit Co.,* 20 Fed. (2d) 519. The fact that such an exception exists indicates that the rule is not based on lack of power but is a rule of expediency, to be applied or refused application as the equities and justice of the cases require. No good reason appears why an exception should not be made in a case like the present, where both parties expressly or impliedly admit that the legal effect of the O. T. Johnson Corporation injunction was in fact considered and fully argued before the trial court. We do not condone the omission of the attorney for appellant in failing to present to the trial court in a counter-affidavit or otherwise the fact that the reason the city had failed to prosecute the condemnation suit was because it had been permanently enjoined from so doing, but we cannot see how the ends of justice would be furthered by applying strictly the technical formalistic reasoning advanced by respondent. It seems to us far more consonant with principles of fairness and justice to all concerned to consider the case on its merits, as did the trial court, and determine whether or not an involuntary abandonment of a condemnation suit, caused by the issuance of a permanent injunction, is such an abandonment within the contemplation of the law of this state as will entitle the defendant to recover his costs and attorney's fees from the condemnor.

█ There is still another reason why, in this case, the interests of justice will be furthered by judicially noticing the O. T. Johnson Corporation judgment. According to the record now presented to us, and without considering the injunction, all the trial court had before it when it granted the judgment of dismissal together with costs and attorneys' fees, was the notice of motion to dismiss, the affidavit of Wm. B. Himrod, and the files and records in the condemnation suit. The affidavit contains the allegations that

the city had abandoned the condemnation action, and had commenced another suit in connection with the same proceeding. No statement of the facts which were claimed to constitute the alleged abandonment appear in the affidavit or elsewhere, nor does it appear what the nature of the pending suit was or whether it involved the same questions involved in the Halperin action. An allegation that the condemnation suit had been abandoned is nothing more than a mere conclusion of law. This necessarily follows because of the fact, as we hold later in this opinion, that it is not every abandonment by the condemnor which entitles the defendant to his costs and attorneys' fees. Since this is so, it was necessary for the respondent to show that the abandonment here involved was of such a nature as to entitle him to his costs and attorneys' fees. The record contains no such showing, and if we were inclined to strictly construe the record we would be compelled to reverse the judgment solely on the ground that there is nothing in the record to show that the abandonment here involved was of such a nature as to entitle respondent to his costs and attorneys' fees. However, we are not inclined to decide this case adversely to respondent because the record is technically insufficient, any more than we are inclined to decide it adversely to appellant on the technicality already discussed. Particularly is this so when the technical deficiency of the record, both as to appellant and respondent, consists in the failure of the record to disclose the existence of the injunction judgment. In fairness to both parties, we think the interests of justice will best be served by deciding the case on the merits and by judicially noticing the existence of the injunction judgment.

We turn then to a discussion of the question as to whether, when a condemnation suit is permanently enjoined, the defendants are entitled to attorneys' fees. ■ It must be remembered that attorneys' fees, in actions generally, are not recoverable as costs. Attorneys' fees are only recoverable when specifically allowed by statute. (*Coburn* v. *Townsend*, 103 Cal. 233 [37 Pac. 202]; *Pacific Gas & Elec. Co.* v. *Chubb*, 24 Cal. App. 265 [141 Pac. 36]; *Bond* v. *United Railroads*, 20 Cal. App. 124 [128 Pac. 786].) Eminent domain proceedings are special proceedings and are governed by a separate and special chapter of the Code of

Civil Procedure (part 3, title 7, sec. 1237 et seq.). ■
If any authority for the allowance of attorneys' fees exists,
it must be found either in that chapter of the Code of Civil
Procedure, or in the provisions of the Street Opening and
Widening Act of 1903, under the terms of which this
particular condemnation suit was instituted. The only sec-
tion of the last-named act in any way referring to abandon-
ment is section 14. So far as pertinent here, it provides
as follows:

"The City Council may, at any time prior to the payment
of the compensation awarded the defendants, abandon the
proceedings, by ordinance, and cause the said action to be
dismissed, without prejudice, and if any of the assessments
levied to pay the expense of the improvements, as herein-
after provided, shall have been actually paid in money
at the time of such abandonment, the same shall be re-
funded to the persons by whom they were paid. If the
proceedings be abandoned or the action dismissed, no at-
torney's fees shall be awarded the defendants, or either of
them." (3 Deering's Gen. Laws, 1931, Act 8198, sec. 14,
p. 4506.) The last sentence above quoted prohibiting the
allowance of attorneys' fees has been held to be uncon-
stitutional. (*City of Los Angeles* v. *Cline,* 40 Cal. App.
487 [181 Pac. 78].) The city maintains that since the
above section provides for an abandonment by ordinance,
it impliedly excludes other types of abandonment, and that
since no ordinance abandoning the improvement was ever
passed in the instant case, no abandonment which entitles
respondent to his costs and attorneys' fees has taken place.
We do not agree with this contention. With the last sen-
tence of the above section deleted there is nothing in that
section or in any other provision of the act in reference
to what constitutes such an abandonment as will entitle a
defendant to his costs and attorneys' fees. We are there-
fore of the opinion that, since the act is entirely silent on
this point, the general provisions of the Code of Civil Pro-
cedure in reference to eminent domain proceedings are con-
trolling on the question as to what constitutes an abandon-
ment by the condemnor so as to entitle the defendant to his
costs and attorneys' fees.

■ Section 1255 of the Code of Civil Procedure provides
for the allowance of costs generally, after judgment, in the

discretion of the trial court. That section does not permit the allowance of attorneys' fees. It refers to "costs" only, and it is well settled that the word "costs", appearing by itself and undefined, means only the ordinary costs of suit, and does not include attorneys' fees. In fact, it has been specifically held that the word "costs" appearing in section 1255 of the Code of Civil Procedure does not include the right to attorneys' fees. (*Lincoln Northern Ry. Co.* v. *Wiswell,* 8 Cal. App. 578 [97 Pac. 536].) The only provision of the Code of Civil Procedure which allows a defendant to recover his attorneys' fees in eminent domain proceedings is section 1255a, added to our code in 1911. (Stats. 1911, p. 377.) It provides: "Plaintiff may abandon the proceedings at any time after filing and before the expiration of thirty days after final judgment, by serving on defendant and filing in court a written notice of such abandonment; and failure to comply with section 1251 of this code shall constitute an implied abandonment of the proceeding. Upon such abandonment, express or implied, on motion of defendant, a judgment shall be entered dismissing the proceeding and awarding the defendant his costs and disbursements, which shall include all necessary expenses incurred in preparing for trial and reasonable attorney fees. These costs and disbursements, including expenses and attorney fees, may be claimed in and by a cost bill, to be prepared, served, filed and taxed as in civil actions; provided, that said costs and disbursements shall not include expenses incurred in preparing for trial where the said action is dismissed forty days prior to the time set for the trial of the said action." Section 1251, referred to in the above-quoted section, has no reference to the present action, it providing for the time of payment of a judgment in condemnation. When read in conjunction with section 1255a, the two sections provide for an implied abandonment entitling the defendant to his costs and attorneys' fees when the case has proceeded to a judgment and defendant's damages have been assessed and the assessment has not been paid. No damages ever having been assessed in the instant case, obviously that clause of section 1255a, *supra,* can have no application. The only question left for determination is whether or not the other provisions of section 1255a of the Code of Civil Procedure allow a defend-

ant his attorneys' fees when the condemnation suit is permanently enjoined. Is that such an abandonment as is contemplated by that section? The question is simply one of interpretation—if that section does not authorize the allowance of attorneys' fees, respondent cannot recover them, for the reason that there is no other statutory provision permitting their allowance.· (*City of Los Angeles* v. *Hannon,* 79 Cal. App. 669 [251 Pac. 247].) Respondent argues that it is the intent of section 1255a to allow the defendant his attorneys' fees in any and all cases when the condemnation suit is abandoned, voluntarily or involuntarily. It is in effect argued that it is the purpose of that section to remove the entire burden of the cost of the litigation from the defendant whenever, for any cause, the condemnor fails to prosecute the action to a conclusion. Giving the most liberal interpretation to the section, we can find no such intent, expressed or implied. The statute provides that the plaintiff may abandon the action by "serving on defendant and filing in court a written notice of such abandonment", or by failing to pay the damages assessed after judgment has been rendered, and then provides *"upon such abandonment"* the defendant shall be entitled to his costs and attorneys' fees. There is nothing in the language of the section to indicate that it was intended by the legislature that in all cases where the action is not prosecuted to a final judgment the defendants in eminent domain proceedings should recover their attorneys' fees. Certainly, giving the statute the most liberal construction, there is nothing in the section which expressly or impliedly indicates an intent to permit defendants in condemnation suits to recover their attorneys' fees when the condemnor has not voluntarily abandoned, but has been involuntarily restrained from further proceeding by a permanent injunction. We do not mean to hold that it is only when the condemnor has served on defendant and filed in court a notice of abandonment or has failed to pay the damages assessed that attorneys' fees can be recovered. We are of the opinion that the language used, liberally construed, means that in every case involving a voluntary abandonment attorneys' fees may be recovered, but we do not think that the statute can possibly be interpreted to apply to a case where the condemnation action is terminated

without the consent, express or implied, and against the wish and will of the condemnor. We are of the opinion, therefore, that the section only refers to cases of voluntary abandonment and not to cases of involuntary abandonment.

Whenever the condemnor voluntarily abandons it is only fair and equitable that the defendants in the condemnation suit should be recompensed, but where the condemnor, as here, has conclusively shown that it in good faith was prosecuting the action, and only desisted because of an injunction, no good reason exists why the defendants should recover their attorneys' fees. Neither the letter nor spirit of the statute covers this situation. We can find no language in the statute authorizing the recovery of attorneys' fees where the abandonment has been involuntary. Even at the expense of being repetitious it is well to state again that unless respondent can show not only an abandonment, but an abandonment within the spirit and intent of section 1255a of the Code of Civil Procedure, no attorneys' fees can be recovered. As we read the section and giving it the most liberal construction possible, it applies only in the case of a voluntary abandonment. Although no case has been decided by the courts of this state directly in point, Illinois has held, in interpreting a provision very similar to section 1255a, that it does not apply to an involuntary abandonment. In the case of *City of Mound* v. *Mason*, 199 Ill. App. 120, the court held in reference to a situation very similar to the one here presented as follows:

"It is contended by appellee that the provision of this statute is broad enough to include the dismissal of a petition for condemnation, not only where the same is voluntarily dismissed by the petitioner, but, also, where after a preliminary hearing the court on the motion of the defendant dismisses the same. Appellee insists in support of his position that the constitutional provision that private property shall not be taken for public purposes, except upon payment of just compensation, should be construed so as to require a petitioner to pay, not only compensation fixed by a jury and costs of the suit, as ordinarily understood, but also that it should be construed to require that the petitioner in a condemnation petition where the same is dismissed by the court over its objection, and where the property is not taken, as a matter of fact, shall be re-

quired to pay, not only the costs of the suit, but also the attorneys' fees and other expenses incurred by the owner of said premises in and about the defense made by him in connection with such condemnation proceeding. In other words, appellee insists that even though the provision of the statute in question is not broad enough in its literal terms to include a judgment against a petitioner for attorneys' fees and other expenses, where a petition for condemnation is dismissed by the court, that the courts in construing such statute should give it that effect.

"In his brief and argument appellee cites the following cases in support of his contention: *Chicago & N. W. Ry. Co.* v. *City of Chicago,* 148 Ill. 141 [35 N. E. 881]; *Epling* v. *Dickson,* 170 Ill. 329 [48 N. E. 1001]; *Sanitary Dist.* v. *Bernstein,* 175 Ill. 220 [51 N. E. 720]; *Peoria B. & C. Traction Co.* v. *Vance,* 251 Ill. 263 [95 N. E. 1081, Ann. Cas. 1912C, 532, 36 L. R. A. (N. S.) 624].

. . . . . . . . . .

"A careful reading of each of these cases discloses that they cannot be held to support the contention of appellee in this case. The language of the above statute seems so clear that it hardly admits of construction. However, in the recent case of *Chicago Great Western R. Co.* v. *Ashelford,* 268 Ill., at page 87, the court in passing on the proviso of section 10 above referred to, at page 93 [108 N. E. 761], uses this language: 'The evident purpose of the proviso to said section 10 was to provide for two instances in which the defendant would be entitled to an order requiring the petitioner to pay the expenses incurred by him in making his defense to the petition: First, in case the petitioner should voluntarily dismiss the petition; and second, in case the petitioner should fail to make payment of full compensation within the time named in the order. In our opinion this was the sole purpose of the proviso.'

"It would seem from the language of this case that the Supreme Court has left but little doubt as to the construction that it places on this statute, and that it only applies where the petition is voluntarily dismissed by the petitioner or where the petitioner fails to pay the compensation within the time fixed by the statute. It is well to bear in mind in the construction of a statute, with reference to the allowance of attorneys' fees, to be taxed against the opposite

party, that such statute is in derogation of the common law and that there is no right to have such feees so taxed unless the provision of such statutes clearly warrants the same.

"For the reasons above mentioned the judgment of the trial court is reversed without remanding."

That section 1255a of the Code of Civil Procedure was not intended to apply to an involuntary abandonment is made evident not only by the language used, but also by the evils the statute was intended to remedy. Before section 1255a was added to the Code of Civil Procedure in 1911, the condemnor had the ability to abandon the condemnation suit, even after judgment, and the only expense to the condemnor was the payment of costs, a nominal expense. Under such a situation, whenever the award granted the defendants was, in the condemnor's estimation, excessive or unsatisfactory, the condemnor would abandon the action, pay the nominal costs, retry the action, and repeat this process until a satisfactory award was arrived at. It was to remedy the evils connected with a situation which permitted the condemnor to resort to an action without seriously intending to prosecute it to a conclusion that section 1255a was enacted. (*Pacific Gas & Elec. Co.* v. *Chubb, supra.*)

Under the general provisions of the Code of Civil Procedure respondents are entitled to their costs as taxed by the trial court, as distinguished from attorneys' fees. For the foregoing reasons, however, it is our opinion that that portion of the judgment of dismissal purporting to allow respondent Halperin attorneys' fees should be, and hereby is reversed. The same reasoning applies to the other twenty-three cases above listed, and for that reason those portions of the various judgments in all of the said cases purporting to allow the respective respondents their attorneys' fees are, and each is hereby reversed. Both sides to bear their own costs on this appeal.

Rehearing denied.