[Civ. No. 21649. Second Dist., Div. Two. Nov. 2, 1956.]

TORRANCE UNIFIED SCHOOL DISTRICT OF LOS ANGELES COUNTY, Respondent, v. HILARIO S. ALWAG et al., Appellants.

Solomon R. Spector for Appellants.

Harold W. Kennedy, County Counsel (Los Angeles), and Lloyd S. Davis, Deputy County Counsel, for Respondent.

MOORE, P. J.—Respondent sued appellants to condemn certain premises for the purpose of constructing a school building thereon. After answer by appellants and the setting of a date for trial, respondent dismissed the action for reasons stated in the affidavit of John B. Anson, Deputy County Counsel, one of the attorneys for the school district.

The affidavit stated, in substance, that the action was dismissed on the motion of the "Board of Education of the Torrance Unified School District" upon its being advised by the State Division of Highways that the state planned to condemn a strip of land running through the middle of subject property for use as a portion of a through highway. Since such a use would be paramount to that contemplated by the school district, and the presence of a highway bisecting the property would render it wholly unsuitable for school purposes, respondent determined it to be impractical and fiscally unwise to pursue its proceedings under eminent domain. Subsequent to the dismissal, the state did in fact institute its action to condemn a strip through the same premises. Appellants moved the trial court to tax costs of the action and attorneys' fees against respondent. The court ordered respondent to pay costs but left each party to bear the expense of his own attorney's fees.

The sole issue presented here is: *Did the dismissal of the action by respondent constitute an "abandonment of the proceedings" within the meaning of Code of Civil Procedure section 1255a, thereby entitling appellants to an award of "their costs and disbursements, which shall include all necessary ex-*

*penses incurred in preparing for trial and reasonable attorney fees''?*

Ordinarily, fees paid to attorneys are not recoverable from the opposing party as costs, damages or otherwise, in the absence of express statutory or contractual authority. (*Le-Fave* v. *Dimond,* 46 Cal.2d 868, 870 [299 P.2d 858].) Therefore, appellants may recover fees only in the event the dismissal was an "abandonment of the proceedings." Respondent contends that (1) the section should be so construed as to provide for an award to defendants of their attorneys' reasonable charges only when the action is instituted and dismissed *in bad faith;* (2) the district terminated the action only upon discovery that the property would no longer be desirable for school purposes; (3) no circumstances indicate a bad faith intent to injure the property owners. Such theory finds some support in the apparent purpose of the section. At one time, certain instrumentalities possessing the power of eminent domain were abusing the privilege by bringing successive actions to condemn parcels of land with no intention of prosecuting to a conclusion. Thereby they "expensed" the property owner into submission to whatever terms should be offered. To defeat this practice, the Legislature provided that the condemner should stand the expense of litigation begun and then abandoned. (*City of Los Angeles* v. *Abbott,* 217 Cal. 184, 200 [17 P.2d 993]; *Whittier Union High Sch. Dist.* v. *Beck,* 45 Cal.App.2d 736, 739 [114 P.2d 731]; *City of Sacramento* v. *Swanston,* 29 Cal.App. 212, 222 [155 P. 101]; *Pacific Gas & Elec. Co.* v. *Chubb,* 24 Cal.App. 265, 270 [141 P. 36].) No facts here indicate any such evil practice on the part of respondent.

The strongest case for this proposition is *Whittier Union High Sch. Dist.* v. *Beck, supra.* There the action was dismissed after the condemner had purchased the subject property by contract during the pendency of the suit. The court disallowed recovery of fees, commenting that "plaintiff's good faith in the instant case was shown when the property was actually purchased.''

However, when the Legislature promulgated the section it could well have used words such as "in bad faith" or "without just cause" if that was truly meant to be the test. Had that been done, the statute would have codified general American case law that a condemner who institutes and dismisses his action in bad faith is liable for resultant dam-

ages to the property owner. (Eminent Domain, 18 Am.Jur. § 371, p. 1014; note, 121 A.L.R. 12, 84 et seq.) Instead, it was provided that attorney fees should be paid by the condemner whenever the action should be "abandoned." ■ "Abandonment includes the intention to abandon, and the external act by which such intention is carried into effect. . . . The characteristic element of abandonment is the voluntary relinquishment . . . the intentional relinquishment of a known right." (*City of Los Angeles* v. *Abbott,* 129 Cal.App. 144, 148-149 [18 P.2d 785].)

Applying this definition, or one essentially similar, it has been held that when the plaintiff instrumentality discontinues its action under the duress of an injunction, the action has not been "abandoned" and thus the defendant is not entitled to recover attorneys' fees under section 1255a. (*City of Los Angeles* v. *Agardy,* 1 Cal.2d 76, 79 [33 P.2d 834] ; *City of Los Angeles* v. *Abbott, supra,* 217 Cal. 184, 197; *City of Los Angeles,* v. *Abbott, supra,* 129 Cal.App. 144.) The rationale of those decisions is that the dismissal in each instance was *involuntary.*

·Here, the board of education was not prevented by external force from carrying on the action. The litigation was terminated by dismissal because of threatened action by the State Division of Highways which would have destroyed or impaired the worth of the land for the use intended by respondent at the outset. In this sense, the dismissal was "voluntary"; in other words, entered after due deliberation by respondent as to the profitability of proceeding. It was a voluntary relinquishment of the known right to continue the suit, and thus was abandonment of the action. ■ A dismissal of a suit is not involuntary merely because taken pursuant to a compelling reason. The decision by the board to discontinue its efforts to condemn the premises may have been quite wise under the circumstances, but this fact does not put the hapless property owner to the burden of his defense. To argue that this action was not "abandoned" because it had lost its value would be tantamount to contending that property is not abandoned which is discarded because of its worthlessness to its owner.

■ An action to condemn property is not of the same nature as ordinary civil litigation. Here there is no defendant alleged to have perpetrated some wrong upon the plaintiff. Rather, it is the exercise by a public body of its sovereign power to force the sale of land. Once the action is com-

menced, the property owner is entitled to defend in order to insure payment of a fair price for his premises. Many factors might intervene between the institution of the proceeding and its fruition, any one of which might cause the condemner to reevaluate the desirability of the subject property for its contemplated use. Such intervention would not be the fault of the defendant nor would it render the plaintiff unable to continue its action. ■ Section 1255a equitably provides that should the plaintiff elect to change its mind and abandon the action, the innocent property owner must be reimbursed the costs of defense thrust upon him.

A further factor here reinforces the conclusion that appellants are entitled to recover their lawyers' fees incurred on account of the condemnation proceedings. The record indicates that the state had resolved to direct a freeway over the subject property one month before the filing of this action. If the board was aware of this resolution at the time of instituting these proceedings, its action was tantamount to bad faith. But even if unaware of such resolution, respondent was in a better position than appellant property owners to acquire information of the state plan. One branch of a government is more likely to be aware of the activities of another than are merely private citizens. (*United States* v. *National Exchange Bank,* 270 U.S. 527 [46 S.Ct. 388, 70 L.Ed. 717].)

Nothing in this opinion is intended to be inconsistent with the holding in *Whittier Union High Sch. Dist.* v. *Beck, supra,* 45 Cal.App.2d 736, to the effect that an action has not been ''abandoned'' when discontinued because of the purchase of the property by the condemner. Under circumstances like those therein described, there is no property to condemn, no defendant property owner to be forced to sell. The condemner had become owner of the object of its litigation through the voluntary sale of the property to the plaintiff by the defendant.

The judgment is reversed insofar as it denies defendants recovery of their reasonable attorneys' fees incurred on account of the condemnatory proceedings. The trial court is directed to determine the amount of such fees and to tax the same as costs in favor of defendants.

Fox, J., and Ashburn, J., concurred.

A petition for a rehearing was denied November 26, 1956, and respondent's petition for a hearing by the Supreme Court was denied December 24, 1956.